**No. 26-1988**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

---

LEAGUE OF WOMEN VOTERS OF MASSACHUSETTS; LEAGUE OF WOMEN VOTERS LOTTE E. SCHARFMAN MEMORIAL EDUCATION FUND; LEAGUE OF WOMEN VOTERS OF THE UNITED STATES; LEAGUE OF WOMEN VOTERS EDUCATION FUND; ASSOCIATION OF AMERICANS RESIDENT OVERSEAS; U.S. VOTE FOUNDATION; OCA-ASIAN PACIFIC AMERICAN ADVOCATES; DELTA SIGMA THETA SORORITY, INC.,

Plaintiffs - Appellees,

v.

DONALD J. TRUMP, in the official capacity as President of the United States; UNITED STATES POSTAL SERVICE; UNITED STATES POSTAL SERVICE BOARD OF GOVERNORS; DAVID STEINER, in the official capacity as Postmaster General; DOUGLAS A. TULINO, in the official capacity as Deputy Postmaster General; AMBER F. MCREYNOLDS, in the official capacity as Chairwoman of the Board of Governors of the United States Postal Service; DEREK T. KAN, in the official capacity as the Vice Chairman of the Board of Governors of the United States Postal Service; RONALD A. STROMAN, in the official capacity as a member of the Board of Governors of the United States Postal Service; DANIEL M. TANGHERLINI, in the official capacity as a member of the Board of Governors of the United States Postal Service; DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, in the official capacity as the Secretary of the Department of Homeland Security; SOCIAL SECURITY ADMINISTRATION; FRANK J. BISIGNANO, in the official capacity as Commissioner of the Social Security Administration; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; JOSEPH B. EDLOW, in the official capacity as Director of U.S. Citizenship and Immigration Services,

Defendants - Appellants,

STATE OF MISSOURI; STATE OF ALABAMA; STATE OF FLORIDA; STATE OF INDIANA; STATE OF KANSAS; STATE OF LOUISIANA; STATE OF MONTANA; STATE OF NEBRASKA; STATE OF OKLAHOMA; STATE OF SOUTH CAROLINA; STATE OF SOUTH DAKOTA; STATE OF TEXAS,

Defendants.

---

On Appeal from the United States District Court
for the District of Massachusetts

---

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR STAY**

---

BRETT A. SHUMATE
*Assistant Attorney General*
ERIC D. MCARTHUR
*Deputy Assistant Attorney General*
BRAD HINSHELWOOD
LAURA E. MYRON
JENNIFER L. UTRECHT
*Attorneys, Appellate Staff*
*Civil Division, Room 7710*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 353-9039*

## TABLE OF CONTENTS

**Page**


INTRODUCTION AND SUMMARY OF ARGUMENT ........................................... 1

ARGUMENT ........................................................................................................ 2

I. The District Court's Order Is Immediately Appealable and the Equitable Factors Favor a Stay ........................................................................ 2

II. Plaintiffs Are Unlikely to Succeed on the Merits. ....................................... 7

CONCLUSION ................................................................................................... 11

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## INTRODUCTION AND SUMMARY OF ARGUMENT

The responses of both the State (*California v. USPS*, No. 26-1987) and organizational plaintiffs (*League of Women Voters (LWVM) v. Trump*, No. 26-1988) repeat the same erroneous characterization of the Final Rule as a sweeping intervention in state election processes that animated their district court filings. The contrast between plaintiffs' rhetoric and the modest requirements imposed by the Rule is stark. The Rule creates standardized design and review requirements for ballot envelopes, requiring that the envelopes include the official Election Mail logo, be automation compatible—so that they can be processed by USPS's high-speed mail processing equipment—and use unique barcodes. 91 Fed. Reg. 54,966, 54,990-91 (Aug. 26, 2026). And the Rule requires States to upload the name-and-address information of intended recipients of ballot mail—information that all election officials necessarily possess—as well as the unique barcode number, into an online portal. *Id.*

Plaintiffs do not—and cannot—seriously dispute that these modest requirements fall within USPS's authority to promulgate rules governing "the collection, handling, transportation, delivery, forwarding, returning, and holding of mail." 39 U.S.C. § 404(a)(1). They instead urge that USPS does not have authority to regulate *elections*. That argument fails to grapple with the limited nature of the Rule. As before, States can continue to mail ballots to whomever they wish; the Rule does not regulate the form or content of the ballots themselves, the timeline for

transmission of ballots, voter eligibility, vote-by-mail eligibility, or anything similar. The Rule regulates only how States must design and label the envelopes of a particularly sensitive category of mail that USPS has long recommended be prepared and labeled differently. It is, at bottom, a regulation *of the mail*, not of elections. That is fatal to plaintiffs' ultra vires and constitutional claims.

Even if plaintiffs could show a likelihood of success, the equities weigh in favor of a stay. At least one State will begin mailing ballots, on September 4, during the pendency of the district court's temporary restraining order (TRO). The TRO bars the Rule's operation with respect to those ballots, thwarting USPS from uniformly implementing beneficial practices for ballot mail, a harm that cannot be remedied by appellate review in the ordinary course, which would "come far too late." *Trump v. California*, No. 26A124, 2026 WL 2473573, at *4 (U.S. Aug. 24, 2026).

## ARGUMENT

### I. The District Court's Order Is Immediately Appealable and the Equitable Factors Favor a Stay

**a.** As established in the government's stay motion, the district court's order is immediately appealable under 28 U.S.C. § 1292(a)(1) because it "has the 'practical effect' of granting or denying an injunction."' *Rhode Island State Council of Churches v. Rollins*, 158 F.4th 304, 311 (1st Cir. 2025) (quoting *Abbott v. Perez*, 585 U.S. 579, 594 (2018)); *see also Northeast Ohio Coalition for Homeless and Service Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1005-06 (6th Cir. 2006) (collecting cases).

The consequences of the TRO are "substantial and immediate." *Rollins*, 158 F.4th at 311. On September 4, North Carolina will begin mailing ballots. *LWVM* Dkt. 218 at 8-9 (hereinafter "Order") (citing *California* Dkt. 5, at 20 n.3, 22 n.12). Federal defendants also understand that Alabama will begin sending mail ballots on September 9. *See* Ala. Code § 17-11-12; Intervenor Mot. 10. Under the district court's order, the federal defendants may continue to review envelope design and facilitate use of the online portal by States that wish to use those processes—including by taking preparatory steps in the event that the injunction is later stayed—but may not verify that ballot envelopes comply with the Rule's requirements before accepting them for mailing. Order 10. The order thus bars the Rule's application to these mailings, which has immediate and irretrievable consequences.

Namely, the order "deal[s] 'a serious setback' to the Executive's 'goals' while this litigation unfolds." *Trump v. California*, No. 26A124, 2026 WL 2473573, at *4 (U.S. Aug. 4, 2026). "Ballot mail presents unique considerations" for USPS; "[f]rom an operational standpoint, [USPS] deploys special practices on a nationwide basis for the processing and delivery of ballot mail," including "the use of extraordinary measures during the period surrounding federal general elections to accelerate the delivery of return ballot mail beyond [USPS's] typical operations when its employees are able to identify a mailpiece as a ballot." 91 Fed. Reg. at 54,968. USPS has long recommended that federal ballot mail envelopes use unique barcodes, be automation compatible, include the official Election Mail logo, and undergo mailpiece design

review in advance of mailing. *See* USPS, Kit 600: *Official Election Mail Guide* (Kit 600), https://about.usps.com/kits/kit600.pdf; *Domestic Mail Manual* 703.8.0, https://pe.usps.com/text/dmm300/703.htm#ep1174014. These features help "to ensure timely processing and delivery" of ballot mail. 91 Fed. Reg. at 54,978. By making "these proven measures a consistent baseline for every jurisdiction that mails federal ballots," the Rule "clos[es] the patchwork that today inhibits mailpiece visibility and can make it more difficult to process and deliver ballot mail." *Id.*

Additionally, the Rule's "data reporting and mail-preparation requirements" place "law enforcement in a better position to identify any potential issues regarding compliance with federal law that may merit further investigation," *id.* at 54,985, and "strengthen public confidence" in voting by mail, *id.* at 54,986. USPS found the "visibility and law enforcement benefits" so significant that it saw "no compelling reason for any delay" in the Rule's effective date. *Id.* at 54,985. Because the order bars the Rule's application as to ballots sent during its pendency, it prohibits USPS from uniformly implementing the beneficial practices prescribed by the Rule for the upcoming election.

Plaintiffs' description of the order merely as a "pause" on the Rule's implementation, *LWVM* Resp. 12, ignores that, by the time the TRO expires, some non-conforming mail will already have been sent. That harm is inherently "irretrievable." *Blackwell*, 467 F.3d at 1006. That is true regardless whether, as plaintiffs emphasize, the district court is proceeding with preliminary injunction

briefing and hearing expeditiously. As the Supreme Court held just last week in staying the *California* plaintiffs' earlier injunction, the government suffers irreparable harm when appellate review in the ordinary course "would come too late" for the upcoming election. *California*, 2026 WL 2473573, at *4. Accordingly, although labeled as a TRO, the district court's order functions as a preliminary injunction and is immediately appealable.

**b.** Plaintiffs, by contrast, have not shown that they will suffer immediate, irreparable harm during the pendency of the TRO. Only one of the State plaintiffs—North Carolina—has represented that it intends to mail ballots while the TRO is in place. The State plaintiffs' response describes at length compliance problems that *other* States allegedly will have *after* the TRO expires, *see California* Resp. 22-26, but is comparatively silent about problems in North Carolina, *id.* at 21. And public reporting suggests North Carolina was preparing to comply with the Rule before the TRO, and that the North Carolina State Board of Elections was "confident that the county boards of elections plans to send out absentee ballots, starting September 4, as required by state law, will happen flawlessly and smoothly." Jen Rice, *Facing time crunch, North Carolina takes first step to comply with new USPS mail voting rule while fighting it* (Aug. 27, 2026), https://perma.cc/SFB6-PAVD.

Plaintiffs' filings also emphasize speculative fears of last-minute confusion and chaos that are largely unfounded and find no basis in the record. For example, the State plaintiffs argue that USPS's ballot-verification process could take "up to one

minute per ballot," a rate would that take "approximately 43 years to scan all of California's 23 million mail ballots." *California* Resp. 2. That grossly misreads the portion of the Rule plaintiffs cite in support, which states that "[s]canning a barcode generally takes less than a minute per mailpiece," and that the verification process "should take no more than a few hours for larger mailings." 91 Fed. Reg. at 54,981.

Likewise, plaintiffs repeatedly highlight recent hearsay claims of a single unidentified individual expressing concerns with the reliability of USPS's IT systems. *E.g.*, *California* Resp. 2, 20-21; *LWVM* Resp. 2-3, 25. Those unsubstantiated assertions, which were not before the district court, add little to plaintiffs' speculative claim that they are harmed because "[n]o one knows . . . if USPS' new online 'portal' for enrolling voters or its ballot-scanning technology will actually function as intended." *California* Resp. 25; *see also* USPS Statement, https://about.usps.com/newsroom/statements/090126-statement-on-development-of-us-federal-ballot-mail-portal.htm.

Moreover, plaintiffs' concerns about last-minute confusion ignore the mirror image problems that are likely to occur in the *absence* of a stay pending appeal. As noted, only a few states are scheduled to mail ballots during the pendency of the TRO. As to the other States, a stay will cause no irreparable harm. But it will ensure continued steps toward compliance with the Rule, which will minimize future confusion if the TRO (or any later preliminary injunction) is stayed or vacated on appeal, at which point the Rule's requirements would again become mandatory.

## II. Plaintiffs Are Unlikely to Succeed on the Merits

Plaintiffs' various arguments that the Rule is unlawful largely ignore USPS's broad authority to adopt rules and regulations designed to maintain an efficient system for collecting, sorting, and delivering mail nationwide. Congress authorized USPS "to adopt, amend, and repeal such rules and regulations, not inconsistent with this title, as may be necessary in the execution of its functions," including "functions as may be assigned to the Postal Service under any provisions of law outside of this title," 39 U.S.C. § 401(2), as well "all other powers incidental, necessary, or appropriate to the carrying on of its functions or the exercise of its specific powers." *Id.* § 401(10). Those specific powers include the power "to provide for the collection, handling, transportation, delivery, forwarding, returning, and holding of mail, and for the disposition of undeliverable mail." *Id.* § 404(a)(1). That authority plainly encompasses a rule governing the design of envelopes and the verification of envelope barcodes.

Plaintiffs urge that the Rule improperly regulates elections because USPS will reject mail that does not comply with the Rule's modest requirements, resulting in an unmailed ballot. But any noncompliant mail can be corrected and then mailed. And in any event, this argument proves far too much. Failure to follow certain mailing rules may result in mail not being sent. That does not mean that all rules governing the mail are converted into election regulations if the mailpiece is election-related. The inverse is also true; a State could not invoke its power to regulate elections to

dictate USPS's practices in handling election-specific mail. And plaintiffs do not apparently question USPS's general authority to treat election mail differently in the course of its regulation of the mail; as we noted, USPS has long specially provided that absentee balloting materials "must not be detained or treated as unpaid mail" and must be "promptly dispatched and delivered to the addressees" even if a mailer does not affix the necessary postage. USPS, *Postal Operations Manual* § 171.3, *available at* https://perma.cc/HY9N-TJ6Q. Similarly, plaintiffs' co-counsel and co-plaintiffs have long advocated for and benefited from specific ballot-mail envelope design elements and the prioritization of such mail. *See NAACP v. USPS*, 2026 WL 1893762, at *1 (D.D.C. July 1, 2026); Kit 600 at 4, https://about.usps.com/kits/kit600.pdf.

Plaintiffs seek to distinguish prior election-specific mail handling efforts by stating that they either were mere "guidance" or else would not result in the rejection of election mail. *E.g.*, *LWVM* Resp. 18; *California* Resp. 10. But there is no material distinction between those actions and this one. Both are rules that are necessary or appropriate to "provide for the collection, handing, transportation, delivery, forwarding, returning, and holding of mail," 39 U.S.C. § 404(a)(1), a fact which does not turn on whether the rules are permissive or mandatory or the goals those rule pursue. Those are policy distinctions, not legal distinctions. If USPS has *no* legal authority to make any rules specific to election-related mail—as seems to be plaintiffs' theory—it is hard to understand how those longstanding efforts would be lawful.

More generally, as noted in the government's stay motion (at 16-18), USPS has invoked the statutory authorities at issue here to promulgate rules regarding the sending of sensitive but non-dangerous matter that poses unique operational concerns, such as replica explosives or cremated remains. Plaintiffs describe these examples as simply applications of prescribed statutory categories of nonmailable matter, *California* Resp. 13, but that is manifestly incorrect. The salient point about *replica* explosives is that they are *not* explosives, 18 U.S.C. § 1716(a), yet plaintiffs do not dispute that USPS may prescribe special rules for their mailing. Plaintiffs similarly fail to place cremated remains in any express statutory category. Instead, those categories of mail present unique operational concerns that warrant special treatment. The same authority applies with equal force to the unique operational considerations ballot mail creates—not only as a category of time-sensitive mail, but as a category of mail that may create an opportunity for criminal activity. *See* 91 Fed. Reg. at 54,969.

Nor is USPS legally obligated to turn a blind eye to the use of the mail to facilitate specific types of fraud. If retirement communities were repeatedly targeted for elder-abuse mail scams, there is no evident reason why USPS could not impose special design and registration rules for envelopes used to send solicitations to such locations. This Rule follows the same basic form, acknowledging the reality that election-related mail is particularly sensitive, that crimes relating to election mail are particularly important, and that USPS has the authority "to facilitate enforcement of

federal law" "[w]hether or not voter fraud is common or uncommon." *Se* 91 Fed. Reg. at 54,969.

The State plaintiffs' response also raises several arguments (at 16-20) under the Administrative Procedure Act (APA). Those arguments fail from the outset: with limited exception, "the Postal Service is exempt from review" under the APA. *Mittleman v. Postal Regul. Comm'n*, 757 F.3d 300, 305, 307 (D.C. Cir. 2014) (citing 39 U.S.C. § 410(a)). The only exception plaintiffs identify is that the APA applies to "proceedings concerning the mailability of matter." *California* Resp. 14. But the Rule is not a qualifying "proceeding[] concerning the mailability of matter." 39 U.S.C. § 3001(m). Enforcing labeling requirements does not render unlabeled or improperly labeled envelopes "nonmailable," as the cremated remains and replica explosive examples discussed above illustrate, and as USPS recognized here. *See* 91 Fed. Reg. at 54,973. Nor does the Rule constitute one of the types of proceedings covered by 39 U.S.C. § 3001(m). *See id.* §§ 3005, 3007, 3012(c) (examples of proceedings).

Plaintiffs' claims thus must proceed as statutory *ultra vires* claims—a standard the Supreme Court has likened to "a Hail Mary pass." *NRC v. Texas*, 605 U.S. 665, 681-82 (2025). Plaintiffs' efforts to avoid this standard miss the mark. They assert that the *ultra vires* standard does not apply to constitutional claims, but that simply repeats plaintiffs' error in asserting that USPS's regulation of the mail is in fact a regulation of elections. They also urge (*LVWM* Resp. 21; *California* Resp. 15) that under *Trump v. Cook*, 146 S. Ct. 2234 (2026) the ultra vires standards apply only when

there is an implied preclusion of review through an alternative statutory review scheme. Even assuming that is true, there is preclusion here; Congress has expressly exempted USPS's actions from APA review. 39 U.S.C. § 410(a).

Put simply, the Rule is a valid regulation of the U.S. mail, as Congress authorized USPS to do. Accordingly, it is a lawful exercise of USPS's authority and does not violate the Constitution.

## CONCLUSION

This Court should grant a stay pending appeal and administrative stay.

Respectfully submitted,


BRETT A. SHUMATE
*Assistant Attorney General*
ERIC D. MCARTHUR
*Deputy Assistant Attorney General*
BRAD HINSHELWOOD
LAURA E. MYRON
*/s/ Jennifer L. Utrecht*
JENNIFER L. UTRECHT
*Attorneys, Appellate Staff*
*Civil Division, Room 7710*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 353-9039*


September 2026

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing motion reply complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because the reply contains 2,596 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point Garamond typeface.

*/s/ Jennifer L. Utrecht*
JENNIFER L. UTRECHT

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Participants in the case are represented by registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Jennifer L. Utrecht*
JENNIFER L. UTRECHT